## Gill *versus* Weston (No. 2).

1. Personal property embraced in a mortgage of a leasehold under the Act of April 27th, 1855, P. L., 379 (Br. Purd., 600), cannot be removed by the lessee and mortgagor, and if removed by him may be followed by the mortgagee wherever he finds it; and this notwithstanding that the mortgage is not due.

[Gill v. Weston.]

2. In such case trover is the proper remedy. A special property and a right to immediate possession is all that is necessary to maintain trover.

3. The mortgage of a leasehold under the act of April 27th, 1855 (P. L., 369), included "all machinery and fixtures thereon—one boiler, one engine, two tanks, 1000 feet tubing, 400 feet casing, sucker rods, engine house derricks and all tools thereon, and all and singular the appurtenances thereunto belonging: "

  *Held*, that this description was sufficient to include a leather belting, and it was therefore competent to prove by oral evidence that such belting was actually on the leasehold premises when the mortgage was executed, and was embraced therein.

4. A leasehold mortgage under the Act of April 27th, 1855 (P. L., 369), is given the same force and effect as a mortgage of real estate, and the mortgagee is given like remedies for protection and enforcement of his security.

5. The Act of April 27th, 1855 (P. L., 369), provides for the mortgaging of a leasehold of "any colliery, mining land, manufactory or other premises: "

  *Held*, that the Act applied to and authorized a mortgage of a leasehold in oil land although the Act was passed before petroleum was discovered.

6. Petroleum is a mineral substance obtained from the earth by a process of mining, and lands from which it is obtained may with propriety be called mining lands.

May 28th, 1885. Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ. Paxson, J., absent.

Error to the Court of Common Pleas of *Warren county:* Of July Term 1885, No. 72.

Trover and conversion, by W. W. Weston, A. Weston and O. Weston, doing business as Weston Brothers, against J. D. Gill, to recover damages for the conversion of an engine and belt claimed by the plaintiffs as mortgagees of the same in connection with a certain leasehold from one A. R. Curtis. This mortgage was that involved in the preceding case of Gill *v.* Weston, in ejectment. Both cases arose upon the same facts, and were argued together.

At the trial, before Brown, P. J., the plaintiffs proved under objection by the defendant a lease from Dorsey Bros. and H. B. Porter and A. R. Curtis dated October 18th, 1882, and recorded December 15th, 1882, in mortgage book F., 564, and a mortgage of the same "together with all machinery and fixtures thereon, one boiler one engine two tanks 1,000 feet tubing 400 feet casing, —— feet sucker rods engine house derricks and all tools thereon and all and singular the appurtenances thereunto belonging," dated November 29th, 1882, and recorded December 15th, 1882, in mortgage book F., 569.

The plaintiffs proved that A. R. Curtis went into possession

[Gill *v.* Weston.]

under the lease and had on the premises two engines, two belts and three completed rigs. He lent to Adams & Story, operating an adjoining tract, a boiler, engine and belt, without the knowledge of Weston Brothers, from which the defendant Gill removed them. The defendant objected to the evidence in relation to the belt, as it was not named in the leasehold mortgage and could not be comprehended under the term "appurtenances." The objection was overruled and defendant excepted. (Third assignment of error.)

It appeared moreover that there was another engine upon the premises which had not been removed and that the engine which was removed from the Adams & Story lot had previously been dismantled or taken to pieces, by whom it was not shown. The defendant claimed title to the goods as sheriff's vendee under a judgment entered on sundry mechanics' liens filed against Curtis *et al.*, doing business as the Florence Oil Company, which were filed on May 3d, 1883.

The defendant requested the court to charge the jury:

1. The mortgage in evidence containing no reference to the book and page of the record of the lease, as required by law, and the lease not being recorded in the deed books of the proper county, as required by law, is invalid as a statutory lien, and the plaintiffs having taken no possession under it, it gives them no rights as against a subsequent execution creditor or the purchaser under such execution. Refused. (Fourth assignment of error.)

2. The mortgage at best is notice of a lien on the property plainly covered by it, and as it expressly names among the articles mortgaged "one engine," it is no notice of a lien on a second engine not on the mortgaged premises, especially while there is still one engine remaining thereon. Refused. (Fifth assignment of error.)

The court charged the jury as follows:—

"On the 18th of October, 1882, A. R. Curtis took a lease for a term of years for some twenty acres of land for oil purposes, in Mead township. This purports to be signed by Dorsey Bros. and H. B. Porter.

On the 29th November, 1882, Curtis made a mortgage to Weston Bros. of this leasehold, together with the fixtures thereon, including as claimed by the plaintiffs, the engine and belt, the subject of this suit. Mr. Curtis testifies that the engine and belt were on the property at the time of the execution of the mortgage. If this is so, then we say [the mortgage vests in the plaintiffs the right to follow the property wherever they could find it, and this notwithstanding the property may have been removed from the leasehold with the permission and consent of Mr. Curtis.] Mr. Curtis had no right as

against the plaintiffs, to permit his property to be taken to the Story & Adams lease, and Story & Adams had no right to permit Mr. Gill to take the property from there. Mr. Curtis having mortgaged the property to plaintiffs, and that mort- gage being of record, the plaintiffs have the right to follow it into the hands of any person with whom it may be found, and may, under the undisputed evidence, maintain this suit against Mr. Gill for taking the property. In other words [the plain- tiffs having a mortgage on the property, cannot be deprived of it in any other way than by their consent, the mortgage being upon record and open to the world.

" The only question for your determination, is the value of the property, at the time and place, and in the condition that it was at the time Mr. Gill took it,] to which in the way of damages you can add interest from that time to this.

"Of course, if he had nothing to do with disabling the en- gine and merely took the pieces, it is only with the value of those pieces that he should be charged."

Verdict for the plaintiffs for $120 and judgment thereon. Whereupon the defendant took this writ assigning for error the admission in evidence of the oil lease and the mortgage thereof (first and second assignments); the admission of evidence relating to the belt (third assignment); the refusal of defendants' points as above (fourth and fifth assignments), and the passages of the general charge noted above in brack- ets (sixth and seventh assignments). Of these the first, sec- ond and fourth assignments relate to questions argued and determined in the foregoing case of Gill *v.* Weston, No. 73 of July Term, 1885.

*R. Brown* (*Charles W. Stone* with him), for plaintiff in error.—The mortgage only covered buildings, fixtures and machinery, and conferred no record lien on anything else; a belt is neither, and there is no evidence to show that the belt in question was on the mortgaged premises when the mortgage was executed. The Act of 1855 was passed with reference to collieries and manufactories and was not intended to apply to oil leases or "oil rigs" which are very different. The defend- ant's second point should have been affirmed. The mortgage covered only "one engine," and there was one on the prem- ises and nothing to show that it was not the one mortgaged. The engine sold by the sheriff to the defendant was *not* on the premises. The charge of the court was too broad that "the mortgage vests in the plaintiffs the right to follow the prop- erty wherever they could find it." A mortgagee out of pos- session should show the circumstances, intent or purpose of the removal: Angier *v.* Agnew, 2 Out., 587. Fraud must be

shown: Asay *v.* Hoover, 5 Barr, 35; Rickert *v.* Madeira, 1 Rawle, 328. The question involved is not the mortgagee's title to the property but the sufficiency of his lien. The title remains in the mortgagor and is subject to his debts: Witmer's Appeal, 9 Wright, 463; Presbyterian Corporation *v.* Wallace, 3 Rawle, 127. The mortgagee should show that the sufficiency of his security is impaired, and his remedy is an action on the case.

*Charles Dinsmoor (James Cable* with him), for defendants in error, cited Hoskin *v.* Woodward, 9 Wright, 42; Witmer's Appeal, 9 Wright, 455; Martin *v.* Jackson, 3 Casey, 504; Tryon *v.* Munson, 27 P. F. S., 250.

Mr. Justice STERRETT delivered the opinion of the Court October 5th, 1885.

This contention involves the right of plaintiffs below to maintain trover and conversion for an engine and belt removed from the leasehold premises by Curtis, the lessee, and subsequently appropriated by defendant below. The right to maintain the action is claimed by them as an incident of the leasehold mortgage which has been considered in writ of error to the judgment in ejectment between the same parties, No. 73 of this term. (Preceding case.) Some of the facts are common to both cases, and, so far as they have been stated in that case, it is unnecessary to repeat them here.

In November, 1882, Curtis made a mortgage to Weston Brothers, plaintiffs below, of the leasehold, "together with all machinery and fixtures thereon," including, as they claim, the engine and belt in controversy. Curtis testified that the engine and belt were on the property when the mortgage was executed. There was also evidence tending to show that the articles in controversy had been removed from the leasehold premises and were subsequently taken possession of by defendant below, who refused to surrender them.

The learned judge charged that if the property was embraced in the mortgage the mortgagees had the right to follow it wherever they found it, notwithstanding it had been removed from the leasehold by permission of the lessee; that the latter had no right, as against them, to permit the property to be removed to the Story & Adams lease, nor had Story & Adams any right to permit defendant below to take it thence; that Curtis, having mortgaged the property in question to plaintiffs below, and the mortgage having been duly recorded, they had a right to follow the property, and under the undisputed evidence in the case they might maintain the action against Gill

[Gill *v.* Weston.]

for taking the same and refusing to surrender it. We discover nothing erroneous in these instructions.

There was no error in admitting the evidence complained of in the first and second specifications, nor in refusing to affirm the proposition covered by the fourth specification. The questions presented in these assignments of error have been considered in the case above referred to and require no further notice.

The court was right in admitting the evidence complained of in the third specification. The general description in the mortgage was sufficient to embrace the property in controversy, and it was certainly not irrelevant to prove that it was actually on the leasehold premises when the mortgage was executed and was embraced therein. For similar reasons the proposition recited in the fifth specification was rightly refused.

There was no error in charging as complained of in the sixth and seventh specifications.

The Act of April 27th, 1855, gives to a leasehold mortgage, executed and recorded according to its provisions, the same force and effect as a mortgage of real estate, and gives the mortgagee like remedies for protection and enforcement of his security. Neither the mortgagor nor any one coming into possession under him as purchaser at sheriff's sale of his interest, subject to the mortgage, has a right to remove the machinery or fixtures, covered by the mortgage, to the detriment of the mortgagee. The law regards such removal as a fraud upon the latter, and permits him to follow the property and assert his right thereto as against the wrong-doer: Hoskin *v.* Woodward, 9 Wr., 42; Witmer's Appeal, Id., 455; and there appears to be no reason why he may not do this, notwithstanding the mortgage is not due, unless the mortgagor has provided against it by reserving to himself the possession and control of the mortgaged property until default is made in payment of the mortgage debt: Martin *v.* Jackson, 3 Casey, 504; Tryon *v.* Munson, 27 P. F. S., 250, 264. A special property and a right to immediate possession is all that is necessary to maintain trover.

It matters not that the Act of 1855 was passed before petroleum was discovered. It is a mineral substance obtained from the earth by a process of mining, and lands from which it is obtained may with propriety be called mining lands. The Act in express terms makes it lawful for the lessee of a term of years of mining lands to mortgage the same.

Judgment affirmed.