### LOVELACE et al. v. SOUTHWESTERN PETROLEUM CO. et al.

(District Court, E. D. Kentucky, at Catlettsburg. September 25, 1919.)

No. 524.

1. **Deeds ⬦95—Unambiguous word not subject to construction.**

If a word used in a deed has a definite meaning in the common, popular, understanding, it must be given that meaning, and it cannot be shown, to change the effect of the instrument, that the parties afterward treated it as having a different meaning.

2. **Mines and minerals ⬦55 (5)—Reservation of "minerals" includes oil.**

A reservation in a deed of "all the minerals in, on, or under" the land conveyed *held* to include oil under the surface.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

3. **Mines and minerals ⬦55 (5)—"Minerals" defined.**

The word "minerals," in its popular meaning, includes petroleum.

At Law. Action by Ollie Lovelace and others against the Southwestern Petroleum Company and others. On motion to direct verdict for defendants. Motion granted.

Judgment affirmed 267 Fed. 513.

J. F. Stewart and S. S. Willis, both of Ashland, Ky., for plaintiffs. Stephen T. Davis, of Winchester, Ky., and Robert H. Winn, of Mt. Sterling, Ky., for defendants.

COCHRAN, District Judge. This case involves the construction of two deeds, the deed from the Millers Creek Lumber Company to John S. Robinson, made the 8th day of January, 1908, and the deed from John S. Robinson and wife to Pendergrass, made December 8, 1910. The question presented as to the first deed is whether or not the grantor reserved one half of the oil rights in the lands covered thereby, and as to the other whether John S. Robinson, by the deed of December 8, 1910, passed to Pendergrass his half of the oil rights acquired under the Millers Creek Lumber Company deed. Those are the two questions.

The reservation in the first deed is of all of the minerals in, on, or under the lands described therein. It is a reservation of one-half—I should say, of all—of the minerals in, on, or under the lands described in the deed. Was that a reservation of one-half of the oil? The claim of the plaintiffs is that it was not, that the reservation did not include the oil that was in the land, and they make that out by taking the position that both parties, grantor and grantee, by subsequent deeds show that they did not understand the word "minerals" to include "oil"; i. e., that both parties to that deed thereby construed the word "minerals" not to include "oil."

[1] Now, assuming for the sake of the argument, that these subsequent deeds indicate that the grantor and grantee in that deed did not understand the word "minerals" to include "oil"; can any effect be given to this except on the basis that the reservation was ambiguous? If the reservation is ambiguous, the subsequent construction by the

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

parties of the reservation may be resorted to; but, if the reservation is not ambiguous, it cannot be affected by subsequent interpretation.

As expressed in a quotation by Judge Winn from Judge Holmes:

"If a deed says 500 feet, and there is nothing in the deed tending to show that they didn't intend 500 feet, it cannot be otherwise shown that the parties meant 500 inches."

If the instrument says 500 feet, that is not ambiguous, and there is nothing in the deed creating an ambiguity, so it cannot be shown that the parties meant inches. The parties are to be taken to have meant what they have unambiguously stated. Another illustration that he uses there is, if in an instrument a man referred to the Bunker Hill Monument, it cannot be said that he intended the Old South Church. That rule is applied to the construction of deeds, contracts, and statutes, and is applicable to the interpretation of all documents. An unambiguous document cannot be shown to mean what it does not say, and an unambiguous document is taken to mean what it says. The Supreme Court has applied that rule to statutes in some striking language in the case of Board of County Commissioners of County of Lake v. Frank W. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060, where Justice Lamar says:

"To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort, in all cases, is to the natural significance of the words, in the order of grammatical arrangement, in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning apparent on the face of the instrument must be accepted, and neither the courts, nor the Legislature have the right to add to it or take from it. [Cases cited.] So, also, where a law is expressed in plain and unambiguous terms, whether those terms general or limited, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."

In Hamilton v. Rathbone, 175 U. S. 414, 20 Sup. Ct. 155, 44 L. Ed. 219, Justice Brown says:

"The general rule is perfectly well settled that, where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction. But where the act is clear upon its face, and when, standing alone, it is fairly susceptible of but one construction, that construction must be given to it. * * * Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity, that an extended review of them is quite unnecessary. The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to to solve, but not to create an ambiguity."

[2] So, then, we must approach this reservation. The construction by the grantor and grantee on the word that they used has no bearing, and can be given no effect, unless you first determine that the reservation is ambiguous. The reservation is of one-half of all the minerals, but it is a reservation of all of the minerals, and it is not simply a reservation of all of the minerals, but it is a reservation

of all of the minerals in, on, and under the lands. You can hardly get a more sweeping reservation than "all the minerals in, on, and under the lands." Now, is the word "minerals" an ambiguous word? In determining whether it is ambiguous, whether it covers the oil, I accept the position taken in the case of Dunham v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696, where it is said that the word is to be construed as the masses of mankind understand it, or in the language of the Supreme Court in the case of Burke v. Southern Pacific, 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527, according to the ordinary and popular sense of the word.

Is or not the popular sense of the word "minerals" that it includes oil? Does or not the mass of mankind take it that the word "minerals" does include oil? Is there any question as to that? A starting place on that question is the Supreme Court of the United States, what it has said in the case of Northern Pacific Railroad Co. v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575, and Burke v. Southern Pacific Railroad Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527. In the Soderberg Case they had up the question whether the word "granite" was a mineral, and in the Burke Case they had up the direct question whether oil was mineral, and the question was treated, not as to whether scientifically granite in the one case and oil in the other case was a mineral, but whether, according to the ordinary and popular sense of the word, the word as used by the mass or bulk of mankind, the word "minerals" in the one case included granite and in the other oil. In the Soderberg Case the plaintiff contended that the word "minerals" only included metals.

I should have said, before I entered upon the subject of whether the word "minerals" is ambiguous or not, that the question is whether the words "minerals," if used alone or with the sweeping language, "all the minerals in, on, and under the land," is ambiguous, not whether there is ambiguity when, in connection with the word "minerals," other specific words, that may affect the meaning to be given to the word "minerals," are used. It must be conceded that there may be ambiguity as to the meaning of the word "minerals" where there are other words in the deed that have a bearing on the question as to what the mineral is, the particular substance that was intended to be included. In such case the other word or words used may go to show that the word "minerals" in that particular instrument was not intended to include oil.

The most striking case of that sort is the West Virginia case (Sult v. A. Hochstetter Oil Co., 63 W. Va. 317, 61 S. E. 307), where the grant was of "all the minerals, coal," etc. The Supreme Court of West Virginia held that the word "coal" was an intensification of the word "minerals," and hence did not include oil. There may be other specific words which may create an ambiguity as to the sense in which the word "minerals" is used. But here there are not specific words, nothing said except the broad and sweeping language of "in, on, and under." No ambiguity exists, unless ambiguity inheres in the word "minerals" when used solely and by itself.

In the Soderberg Case, as stated, the contention that the Supreme

Court had to decide was whether the word minerals only included metals. After disposing of the contention that it should not be limited to metals, it goes on to show affirmatively and positively that it includes granite. It says:

"The rulings of the Land Department, to which we are to look for the contemporaneous construction of these statutes, have been subject to very little fluctuation, and almost uniformly, particularly of late years, have lent strong support to the theory of the patentee that the words 'valuable mineral deposits' should be construed as including all lands chiefly valuable for other than agricultural purposes, and particularly as including nonmetallic substances, among which are held to be alum, asphaltum, borax, guano, diamonds, gypsum, resin, marble, mica, slate, amber, petroleum, limestone, building stone and coal. [That now is the construction of the Land Department and they laid down that rule.] The cases are far too numerous for citation, and there is practically no conflict in them. The decisions of the state courts have also favored the same interpretations. Thus in Gibson v. Tyson, 5 Watts, 34, chromate of iron was held to be included in a reservation of all minerals. In Hartwell v. Camman, 10 N. J. Eq. 128, 64 Am. Dec. 448, a grant of 'all mines, minerals, open or to be opened.' was held to include paint stone, on the ground that it was valuable for its mineral properties; the court distinctly repudiating the idea that the term should be confined to metals or metallic ores. In Funk v. Haldeman, 53 Pa. 229, and in Gill v. Weston, 110 Pa. 313, 1 Atl. 921, petroleum was held to be mineral, although the act authorizing the lease of mining lands was passed before petroleum was discovered. See, also, Gird v. California Oil Company, 60 Fed. 531. The same principle was extended in Westmorland & Co. Natural Gas Company v. De Witt, 130 Pa. 235, 5 L. R. A. 731, 18 Atl. 724, to natural gas, which was said to be a mineral feræ naturæ."

For some reason no mention is made of the case of Dunham v. Kirkpatrick. I think probably in the brief it was cited.

"In Armstrong v. Lake Champlain Granite Co., 147 N. Y. 495, 42 N. E. 186, a conveyance of 'all minerals and ores' was held to include granite subsequently discovered on the premises, though it would not pass under the name of 'mineral ores.' In Johnston v. Harrington, 5 Wash. 78, 31 Pac. 316, the Supreme Court of that state thought it would hardly be disputed that stone was a mineral, though it seems inconsistent with the subsequent case, in the same volume, of Wheeler v. Smith, 5 Wash. 704, 32 Pac. 784, holding that the term 'mineral' was only intended to embrace 'deposits of ore.' The rulings of the English courts have, with a possible exception in some earlier cases, adopted the construction that valuable stone passed under the definition of minerals. Said Baron Parke in Rosse v. Wainman, 14 Mees. & W. 859, 872: The term 'minerals,' * * * though more frequently applied to substances containing metals, in its proper sense includes all fossil bodies, or matters dug out of mines; and Dr. Johnson says that all metals are minerals, but all minerals are not metals; and mines, according to Jacob's Law Dictionary, are quarries or places where anything is digged: and in the Year Book, 17 Edw. III, c. 7, minerae pierre and de charbon are spoken of. Beds of stone, which may be dug by winning or quarrying, are therefore properly minerals, and so we think they must be held to be in the clause in question, bearing in mind that the object of the act was to give the surface for cultivation to the commoners and to leave in the lord what it did not take away for that purpose. This case was followed in Micklethwait v. Winter, 6 Exch. 644, in which the same act of Parliament was held to include stone dug from quarries. In Midland Railway Co. v. Checkley, L. R. A. 4 Eq. 19, stone for road making or paving was held to be a mineral; the Master of the Rolls observing: 'Stone is, in my opinion, clearly a mineral, and in fact everything except the mere surface which is used for agricultural purposes. Anything beyond that, which is useful for any purpose whatever, whether it is gravel, marble, fire clay, or the like, comes

within the word "mineral" when there is a reservation of the mines and minerals from a grant of land.' In Midland R. Co. v. Haunchwood Brick & Tile Co., L. R. 20 Ch. Div. 552, brick clay was held to be a mineral; and in Hext v. Gill, L. R. 7 Ch. 699, the House of Lords held that china clay, and every substance which may be obtained 'from underneath the surface of the earth for the purpose of profit,' was a mineral, unless there is something in the context or in the nature of the transaction to induce the court to give it a more limited meaning. The same rule was applied in several analogous cases of granite, sandstone, flint stone, and in other similar circumstances. Atty. Gen. v. Welsh Granite Co., 35 Week. Rep. 617 (granite); Bell v. Wilson, 2 Drew. & S. 395 (sandstone); Tucker v. Linger, L. R. 8 App. Cas. 508 (flintstone); and a dozen other cases to the same effect."

In that same case Justice Brown says:

"We do not deem it necessary to attempt an exact definition of the words 'mineral lands,' as used in the act of July 2, 1864. With our present light upon the subject, it might be difficult to do so. It is sufficient to say that we see nothing in that act, or in the legislation of Congress up to the time this road was definitely located, which can be construed as putting a different definition upon these words from that generally accepted by the text-writers upon the subject. Indeed, we are of opinion that this legislation consists with, rather than opposes, the overwhelming weight of authority to the effect that mineral lands include, not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture."

In the Soderberg Case the contention was, as to the meaning of the word "minerals," whether it included granite, that, according to the popular and ordinary sense of the word—that is, according to the interpretation that the bulk or mass of mankind put upon it—it is not limited to metals. This contention was upheld. In the Burke Case the contention which they seem to have had to meet was the claim that oil was not scientifically a mineral, because oil was of a vegetable origin, and therefore was not scientifically a mineral. There the contention was that there were three different divisions of matter, the animal, vegetable, and mineral kingdoms. The mineral division includes everything that is not embraced in the animal and vegetable. The contention was that oil was not in the mineral division, because it was of vegetable origin. This would also exclude coal. In the case of Mullan v. United States, 118 U. S. 271, 6 Sup. Ct. 1041, 30 L. Ed. 170, they had up the question whether or not coal was a mineral, on the ground that it was of vegetable origin. It was held that it was. In the Burke Case it was contended that oil was not a mineral, not because, according to the popular and ordinary sense of the meaning of the word by the masses or the bulk of mankind, it was not, but because scientifically it was of vegetable origin. Like coal, it was of organic origin.

Mr. Justice Vandevanter makes no reference to Dunham v. Kirkpatrick, for some reason or other. He says:

"Petroleum has long been popularly regarded as a mineral oil. As its derivation indicates, the word means 'rock oil,' an oily substance so named because found naturally oozing from crevices in rocks. Its existence in this country was known from very early times, and when this and other railroad land grants, containing an exception of mineral lands, were made, the extraction of oil from its natural reservoir in subterranean rocks had come to be a promising industry, and was extending over an increasing area through dis-

coveries of new oil fields. An official report laid before Congress a few months before this grant was made showed that the daily output of the oil wells in Pennsylvania, Ohio, West Virginia, and Kentucky was 12,000 barrels. H. R Ex. Doc. No. 51, 39th Cong. 1st Sess. In the same year the Supreme Court of Pennsylvania, in disposing of an oil land controversy, not only treated the oil as a mineral, but spoke of the work of extracting it from the containing rocks as 'mining for oil,' and, in concluding the opinion, said: 'Until our scientific knowledge on the subject is increased, this is the light in which the courts will be likely to regard this valuable production of the earth.' Funk v. Haldeman, 53 Pa. 229, 7 Mor. Min. Rep. 203. And in another case that court said: 'It is a mineral substance obtained from the earth by a process of mining, and the lands from which it is obtained may with propriety be called mining lands.' Gill v. Weston, 110 Pa. 312, 317, 1 Atl. 921. Its mineral character has also been affirmed by the courts of other states [West Virginia, Ohio, and Tennessee]."

Then he refers to legislation on the subject, and finally concludes by saying:

"Notwithstanding these persuasive considerations for now regarding petroleum lands as mineral lands within the meaning of the excepting clause in the granting act, we are asked to give effect to the strictly scientific view that petroleum is a resultant of the decomposition of organic matter under certain conditions of temperature and pressure, and therefore is not a mineral. As we understand it, scientists are not in full accord upon this point, some ascribing to petroleum an inorganic origin. 21 Enc. Britannica (11th Ed.) p. 318. But, passing this seeming divergence in opinion, and assuming that, when subjected to a strictly scientific test, petroleum is not a mineral, we think that it is not the test contemplated by the statute. It is dealing with a practical subject in a practical way, and we think it used the words 'mineral lands,' and intended that they should be applied, in their ordinary and popular sense. In that sense, as before indicated, they embrace lands chiefly valuable for petroleum."

[3] The Supreme Court in those two cases decides that, according to the popular sense of the word, "minerals" includes petroleum. There is no doubt about it that the cases are unanimous that it does, except the case of Dunham v. Kirkpatrick, the Pennsylvania case relied on by the plaintiffs. For some reason or other the Supreme Court makes no reference to this case, in which it was distinctly held that petroleum was not a mineral. How, then, did that court reach that conclusion? It held that petroleum oil scientifically was a mineral, though in the Burke Case, the contention was that it was not scientifically a mineral because of vegetable origin. The Supreme Court of Pennsylvania conceded that it was a mineral scientifically, and that on that ground that it belonged to the mineral kingdom, but it held that according to the popular and ordinary sense of the word—i. e., as the mass or bulk of mankind viewed it—it was not a mineral. It did not say affirmatively what the thought of the court was as to what the word "minerals" embraces according to the mass of mankind, but its impression made on me is that it was limited to metals. In the Soderberg Case Justice Brown said:

"Upon the other hand, a definition which would confine it to the precious metals, gold and silver, would so limit its application as to destroy at once half the value of the exception."

And, if the meaning of the word "minerals" should be limited to metals, it excludes coal.

Thus far I have treated the matter irrespective of Kentucky decisions. Of course, whatever position they take on the matter is controlling. So far as the point decided in the McKinney Case, 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934, is concerned, that case has no bearing here. There the grant or reservation was not limited to the word "minerals." There were other specific words used. I think in one of the deeds it said "minerals such as," and named gold, silver, and other—probably coal; ' I do not remember. Besides certain incidental rights were granted, which affected the construction. I have no reason to doubt the correctness of that decision. The grant, however, was not limited to the general word "minerals," as here. The grant was properly limited to solid minerals. There is this to say about that case, however, that the court gives more consideration to Dunham v. Kirkpatrick than it is entitled to. That case should be repudiated as wrong, but the Court of Appeals cited it as rather confirming the court in its contention. I do not recall any general expression in the opinion as to what the word "minerals," without any other words to qualify its meaning in its popular sense, includes. The language of Judge Hobson in the Diamond Case, 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912C, 417, gives it a broad sense, and so as to include oil. I do not recall just exactly what he said. Then in one or two other cases they speak as if there is no doubt about oil being a mineral, not simply scientifically, but in the popular sense. So I am compelled to reach the conclusion that the word "minerals," in the clause "all minerals in, on, and under the land," is not affected by the subsequent transactions of the grantor and grantee that are relied on to show that they did not understand the word "minerals" in the deed in question as including the word "oil," and that these subsequent transactions cannot be considered in determining what the word "minerals" in the grant in question was intended to cover, because the reservation is unambiguous.

Just here it should be noted that these are subsequent transactions. Always, in construing a grant or contract, the court has the right to consider it in the light of existing circumstances; not only has a right to, but it is its duty to consider the grant in the light of its environment. But these transactions did not happen until after the grant, and hence cannot be considered in interpreting the grant; it being unambiguous. Whilst, however, I take the position that these subsequent transactions can have and should have no bearing on the interpretation of the reservation in this deed, I do not admit that they are adverse to the interpretation that I have placed upon it. In none of these subsequent grants relied on was it said that they did not mean to include "oil" in the word "minerals" in the reservation in question. In the deeds from Robinson the reservation is of the oil, gas, and minerals. This, it is claimed, shows that Robinson did not think the word "minerals" included the gas and oil; that if he had thought that minerals included oil and gas, he would have only said minerals, and

not mentioned oil and gas. This does not show that he did not think that minerals included oil and gas. There is such a thing as tautology; the use of more words than are necessary; saying things over again. Some good writers do that.

These reservations are in ordinary out and out deeds. The reservations are of the oil and gas and minerals. There is no express statement that the grantor did not think the word "minerals" included oil. It is only a matter of inference, from his specifying oil and gas, that he did not think that word included them. Possibly, however, the writer of the deeds started out to specify oil and gas, and got tired using specific words, and put in the word "minerals" to cover all; or he may have thought that there might be some question whether or not oil and gas was included in the word "minerals." So, to remove the question, he may have specified oil and gas. It does not necessarily mean that, because he said "oil and gas and minerals," he thought the word "minerals" did not include the oil and gas. As I say, he may have started out to specify each one, and got tired of specifying, and put in the word "minerals," or he may have thought that there may possibly be some question about oil and gas being included by the word "minerals"; so as to leave no doubt about it, he specified them. At any rate, the grantor did not say that the word "minerals" in the deed of January 4, 1908, was not intended to include everything that was mineral in the popular sense.

It is true that only 20 days elapsed between the time of the deed to Robinson and the deeds he made. We do not know what may have come to light after that. He does not say a word about the reservation in the deed to him as to the word "minerals" therein, and as to what it was intended to include. The same may be said about the subsequent deeds made by the Millers Creek Lumber Company.

This brings me to the other question; that is, as to the deed from Robinson to Pendergrass on December 8, 1908. It strikes me that that deed shows clearly that he intended it to cover the oil. It is a sort of awkward deed, but I think the intention of it is plain. Robinson, the grantee in the deed of January 4, 1908, had before this made a dozen or so deeds conveying portions of this land to divers and sundry parties, and he makes a deed covering the rest of it to Pendergrass. He had, therefore, made two deeds to Pendergrass, one for 30 acres, and one for 560 acres. What he conveys is certain described property lying and being in Lee county, Ky., on the waters of Millers creek, contain 2,000 acres, more or less, excluding and reserving 148 acres sold to Malin Jones. I take it that this conveys all of the land, and certainly all of the minerals, oil, and gas. Then the deed proceeds to say that there is "hereby deeded one-half of all the coal," etc., "in the boundary above mentioned." It has already used sweeping language, that granted everything, and then conveyed "one-half of all the mineral and metal and mineral substances of every kind and character upon, in, and under the above described boundary," except under the said 148 acres sold to Malin Jones, 50 acres sold to McIntosh, and two tracts sold to Pendergrass, one for 560 acres and the other for 30 acres.

The deed to McIntosh contained no reservation at all. The conveyance was of one-half of the coal and all the other minerals, metals, and mineral substances upon, in, and under said 2,000 acres, except the 148 acres and the 50 acres and the 560 and 30 acres. There is no ambiguity about that. There is first a conveyance of the 2,000 acres, excepting the 148, which would include all the mineral rights; then this is followed up by a conveyance of one-half of all the mineral rights in the whole of that 2,000 acres, except what had been deeded to these other parties. The deed then enumerates certain conveyances theretofore made, in which reservations were made.

In all those deeds, except the McIntosh and the two Pendergrass deeds, there were reservations, and these reservations are then conveyed. This is the third time that he has used language covering all the mineral rights which Robinson had in the land in question. He first conveys the 2,000 acres of land, except the 148 acres; then he conveys the mineral rights in all except the four parcels mentioned; and then conveys the reservation. He was determined to cover those mineral rights. He did not leave out anything that might show that he intended to sell and convey those mineral rights.

We come to the habendum clause, "To have and to hold same, together with all appurtenances thereunto belonging, except one-half of the mineral in, upon, and under the entire tract of 2,000 acres, more or less, and all of the coal and mineral under the land heretofore sold to," etc. He did not mean to withdraw something that he had theretofore conveyed. His meaning here was to except the mineral rights from the warranty.

I am therefore constrained to hold that the deed from the Millers Creek Lumber Company to John S. Robinson reserved one-half of the oil in the lands covered by it, and that the deed from Robinson to Pendergrass conveyed the other one-half, which Robinson acquired under that deed.

Hence I instruct you to find for the defendants.