## Associate Discount Corporation v. Houser

*Charles A. Szybist,* for plaintiff.
*Sidney A. Simon,* for defendant.

GREEVY, P. J., September 23, 1970.—This is an action in trespass by Associate Discount Corporation, a New York corporation, against Lee O. Houser, a registered Pennsylvania used car dealer. This case, which was heard by the court without a jury, involves an interpretation of article 9 of the Uniform Commercial Code with respect to secured transactions: Uniform Commercial Code, as amended October 2, 1959, P. L. 1023, article 9, 12A PS, hereinafter cited as UCC.

The following facts were stipulated by the parties and we adopt them as our

## FINDINGS OF FACT

1. Associate Discount Corporation, a New York corporation, with its principal place of business at Levittown, N. Y., is a finance company.

2. On or about December 8, 1964, Thomas A. Metzak purchased a 1963 Pontiac Coupe from Karms Auto Sales under a retail installment contract.

3. Subsequently, Karms Auto Sales assigned this contract to Associate Discount Corporation.

4. A copy of the contract, together with a financing statement showing Associate Discount Corporation as the secured party was properly filed in New York on December 21, 1964.

5. Subsequent thereto, Thomas Metzak sold said vehicle to Bobbie Motors, of New York, a used automobile dealer.

6. On August 13, 1965, Bobbie Motors sold said vehicle through the Manheim Auto Auction to Lee O. Houser, a registered Pennsylvania used car dealer for the sum of $1410 as one of a series of sales of cars through the Manheim Auction extending over a period of time, such sale taking place within four months of time vehicle was brought into Pennsylvania. (By Defendant: "If it becomes material . . . the value at

the time of the sale was $1795.00 . . . the actual purchase price . . . was $1410.00.")

7. The State of New York does not maintain a central automobile title system, whereby encumbrances can be noted on a title, and transfers of automobiles are by ordinary bill of sale, which was given by Bobbie Motors to Lee O. Houser at the time of purchase.

8. Manheim Auto Auction is a business restricted in its use to automobile dealers, new and used, where automobiles are bought and sold by such dealers and among such dealers as a regular part of their business.

9. No advice was given nor did Lee Houser have any knowledge or reason to know of any encumbrance on the auto involved in this case at the time of purchase, nor at any time thereafter until demand was made upon him by Associate Discount Corporation, sometime subsequent to disposal of this vehicle by Lee O. Houser subsequent to March 1967.

10. Associate Discount Corporation never filed any papers to perfect its security interest in the Commonwealth of Pennsylvania, the situs of Manheim Auto Auction.

11. On or about August 18, 1965, defendant Lee O. Houser, sold the 1963 Pontiac in question to a third person, and when application was made to the Pennsylvania Department of Motor Vehicles for a Pennsylvania title, there was no notation on the application of a lien in favor of the plaintiff.

12. The following exhibits were stipulated: (a) The retail installment contract; (b) the security filing in New York; (c) the original New York certificate of title; (d) the Pennsylvania application for a certificate of title. (e) A Xerox copy of the ledger page of the Manheim Auto Auction concerning the Bobbie Motors transactions (plaintiff objected to this exhibit on the grounds of relevancy; the exhibit is admissible over the objection of plaintiff).

With these stipulated facts, the court makes disposition of this case pursuant to article 9 of the Uniform Commercial Code.

## CONFLICT OF LAWS

Since attachment occurred in New York State (see stipulation 1 through 4), the validity of this attachment is to be determined by New York law, whereas the issues of perfection, priority, conversion and value are controlled by the laws of this Commonwealth: UCC sec. 9-103(3) and comment 7. (Hereinafter, UCC "comment" refers to the revised comments in the Uniform Commercial Code: 1962 Official Text published by the American Law Institute.)

## TYPE OF ARTICLE 9 PROPERTY

According to the facts stipulated, the automobile involved in this case is classified as "inventory" for the purpose of article 9: UCC sec. 9-109(4) and comment 3. See also, UCC sec. 9-103 and comment 7, and stipulations 5, 6 and 8.

## ATTACHMENT AND PERFECTION

Since the original attachment and perfection were proper under the laws of New York (see stipulations 1 through 4), the New York perfection in favor of plaintiff continued perfected in Pennsylvania during the time period in which defendant purchased and then sold the automobile in question: UCC sec. 9-103(3) and comment 7. See also stipulation 6.

## PRIORITY

The central issue in this case requires a determination of article 9 priority for the perfected security interest in the automobile purchased by defendant on August 13, 1965.

Normally, an unperfected security interest, such as that held by defendant, would be subordinate to the priority of plaintiff's perfected security interest.

See, e.g., UCC secs. 9-301 and 9-312. Defendant contends, however, that he is entitled to an exception to this general rule because of the protection accorded to certain buyers of goods.

"*A buyer in the ordinary course of business* (subsection (9) of section 1-201) other than a person buying farm products from a person engaged in farming operations *takes free of a security interest created by his seller* even though the security interest is perfected and even though the buyer knows of its existence." UCC sec. 9-307(1). (Italics supplied.)

We assume, arguendo, that defendant was an article 9 "buyer in the ordinary course of business," that he had the requisite "good faith," and that he did not know that "the sale (was) in violation of some term in the security agreement not waived by the words or conduct of the secured party." See, e.g., UCC sec. 9-307(1) and comment 2; UCC sec. 1-201(9) and comment 9; UCC sec. 1-201(19) and comment 19.

However, we find that defendant does not come within the protection of section 9-307(1) which would otherwise give him priority, because *the security interest in the automobile was not created by "his seller."* The security interest was not created by Bobbie Motors of New York or the Manheim Auto Auction of Pennsylvania, but rather it was created by Karms Auto Sales who assigned its rights to plaintiff. See stipulations 2, 3, 5 and 6.

Therefore, without the protection of section 9-307(1), defendant's interest is subordinate to the perfected security interest of plaintiff.

## CONVERSION

Since the security interest of plaintiff was perfected when defendant bought the automobile and defendant's purchase was subject to that security in-

terest, the sale of the car by defendant was a conversion of the car as against plaintiff. See, e.g., Al Maroone Ford v. Manheim Auto Auc., 205 Pa. Superior Ct. 154, 160 (1965); Comrcl. Bk. Corp. v. Active Loan Co., 135 Pa. Superior Ct. 124, 132, 4 A.2d 616 (1938); Gill v. Weston, (No. 1) 110 Pa. 312, 1 At. 921 (1885).

## VALUE

Neither party has adequately discussed the issue of value. Therefore, we hold that the amount of defendant's liability is $1,795 as stipulated by defendant.

## CONCLUSIONS OF LAW

1. Plaintiff has proved by a fair preponderance of the evidence his right to recover from defendant.

2. The sale of the car by defendant was a conversion of the car as against plaintiff.

3. Defendant's interest is subordinate to the perfected security interest of plaintiff.

4. Verdict for plaintiff will be granted in the amount of $1,795.

## VERDICT

And now, September 23, 1970, the trial judge sitting as a court without a jury hereby finds a verdict in favor of plaintiff and against defendant in the amount of $1,795.

Notice of this verdict shall be given by the prothonotary to the parties or their counsel. If no exceptions are filed within 20 days after service of such notice, final judgment shall be entered by the prothonotary.