[No. 497.   Decided October 13, 1892.]

## E. W. JOHNSTON, *Appellant*, v. HARRINGTON & SMITH, *Respondents*.

PUBLIC LANDS — OWNERSHIP OF QUARRIED STONE — MECHANIC'S LIENS — SUFFICIENCY OF CLAIM.

One who quarries stone upon the public land of the United States becomes the owner of such stone, and the fact that he has filed a coal declaratory statement upon the land from which the stone is quarried does not in any way affect his ownership of the stone.

Where an exhibit or itemized statement, which is made a part of a notice of claim of lien, contains a statement of the amount due after deducting all just credits and offsets, it is as full a compliance with the statutory requirement thereon as if the statement should be included in the notice itself.

A verification of a claim of lien reciting that the claimant "knows the contents thereof, that said claim is just and correct," is a sufficient compliance with the statute requiring that the verification be "to the effect that the affiant believes the same to be just."

A claim of lien is sufficient if it fairly shows that the materials were furnished to be used in the building or structure designated.

Where the claim of lien shows either in the notice or exhibit, the quantity of materials and when furnished, and also between what dates the materials were used in the construction of the building, it is a sufficient statement of the time when claimant ceased to furnish materials for the building.

*Appeal from Superior Court, King County.*

*J. A. Stratton,* and *Allen & Powell,* for appellant.

*Preston, Carr & Preston,* and *W. P. Bell,* for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—The respondents were owners of a lot in the city of Seattle, described in the complaint, on which they were erecting a building. They had contracted with one C. E. Crow for the stone work, and the appellant, Johnston, furnished Crow the stone for the building. This action was instituted by Johnston to foreclose a mechanic's lien on the premises for the stone so furnished. Crow was made a party defendant, but had absconded before the action was brought, and service could not be had upon him. A trial upon the merits was had against the defendants, Harrington & Smith, resulting in a judgment for them, and plaintiff appealed.

The appellant, Johnston, had filed a coal declaratory statement on certain public land of the United States, situated in Skagit county, and was in possession thereunder. He let a contract to one William Tinkham to develop this coal claim. Tinkham began to make an excavation to intersect whatever veins of coal there were on the land, and to level a place for machinery. In making the excavation Tinkham blasted out stone suitable for building purposes, and sold it. Subsequently Tinkham sub-let the contract to C. E. Crow, and agreed, for a stated price, to deliver the stone on board scows to Johnston, who transported it to Seattle, and sold it as building stone. Johnston sup-

plied Crow, the contractor for Harrington & Smith, with stone for the building until he absconded, and continued to deliver stone for the building afterwards. The value of all the stone so furnished was $2,032.20, of which only $358.20 was paid. After finding substantially as facts all of the material allegations of the complaint, the court further found that the work done upon the said land was done in connection with the said stone quarry, and for the purpose of quarrying the said stone for sale. From the facts found the court concluded that neither Crow, Johnston nor Tinkham had any right, title or interest whatsoever to any portion of the stone mentioned and described in plaintiff's complaint, the same having been taken from the public lands of the United States, and dismissed the action at the cost of the plaintiff.

The primary question in the case is, was Johnston the owner of the stone that went into the building of the respondents under the agreement with their agent and contractor, Crow? The learned counsel for the respondents assert in their brief that the title to the land from which the stone was taken was in the United States, that the stone was part of the land, and, therefore, contend that the appellant could have had no ownership whatever in the stone; that admitting that appellant's coal filing was made in good faith, he acquired no right, privilege or license thereunder to quarry stone for sale. They argue that while he had the right to go upon the land in good faith and prospect for coal, and for that purpose to sink shafts, drive tunnels, and make other explorations, he had no more right to quarry and sell stone than a timber, homestead or preemption claimant would have to remove and sell the timber growing upon the land claimed by him. And they cite numerous cases in the federal courts to show that claimants under the land laws of the United States are not permitted to cut and sell timber growing upon their claims,

for speculative purposes, before making final proof and
entry.    While not citing any case involving facts similar
to those in the case at bar, they insist that upon principle
the cases cited should be held applicable here.

It must be admitted that the position of counsel is, to
say the least, not without plausibility.    It cannot be denied
that the United States is the owner of the public lands
within its territorial jurisdiction, including everything both
above and below the surface.    But whether the stone in
controversy, as between these parties, after being severed
and taken from the ground, belonged to the United States,
or to the appellant, can best be determined by ascertaining
the claims of the former as shown by its legislation, and
the general policy it has adopted with reference to its min-
eral and other lands.    The general government has always
been, and still is, the owner of vast areas of land covered
with timber of superior quality and of immense value,
much of which is remote from settlements and difficult of
direct supervision, and yet so accessible as to be peculiarly
subject to spoliation.    For this reason it has deemed it for
the best interests of the people at large to adopt stringent
measures to prevent these lands from being denuded of
their timber, and thus deprived, in many places, of almost
their entire value.    Congress has enacted laws making it a
crime punishable by a heavy penalty to cut down or de-
stroy the timber growing on the public domain, and many
suits have been waged by the United States, in its courts,
to recover the value of timber unlawfully taken from the
public lands.    But with regard to mineral lands the policy
of the government has been different.    Recognizing the
fact that the precious metals and other valuable mineral
substances are usually hidden beneath the surface of the
earth, and that their discovery and extraction are nearly
always the result of patient search and labor, and of large
expenditures of money, congress has always tacitly per-

mitted any person who desired to do so to enter freely upon the mineral lands, and not only search for the precious metals, but, if discovered, to dig them out and appropriate them to his own use without requiring him either to pay for them or the land from which they were taken. Previously to the year 1866 the mineral lands of the United States were neither subject to sale nor to entry under any law of the United States. There was no law of congress authorizing any person to mine upon the public lands, and yet it is a well known fact that millions of dollars' worth of minerals were taken from these lands by individuals and corporations who had no right whatever in the land itself. Soon after the discovery of gold in California thousands and tens of thousands of sturdy citizens from all parts of the country wended their way by slow and difficult marches to that then far off land, lured only by the hope of honest gain. The government, though aware of the fact, took no steps to intercept them, and sent no "special agents" to prevent its hidden treasures from being discovered and taken from its lands, nor did congress pass any law declaring the miner a trespasser. Neither did the United States bring any suits to recover from the miner the fruits of his toil. After many years of acquiescence in free and unrestricted mining in the lands belonging to the government, congress in the year 1866 passed a law declaring the mineral lands to be free and open to exploration for minerals, and providing rules and regulations whereby title to the same might be obtained. It did not, however, restrict the previously recognized right to mine, nor attempt to compel any one to purchase the land containing the mine in order to avail himself of the right.

The question of ownership of ores containing precious metals taken from lands belonging to the United States by parties having no interest therein was passed upon by the supreme court of the United States in the case of *Forbes v.*

*Gracey*, 94 U. S. 762. In that case a mining company was in possession of lands of the United States, but without any title thereto, and was taking therefrom mineral ore of immense value. A tax was levied upon these ores under the laws of the State of Nevada, the collection of which the company sought to enjoin on the ground that the ore thus taken was the property of the United States, and not taxable by the State of Nevada. In delivering the opinion of the court, MILLER, J., said:

"As we construe the statutes of the United States and the recognized rule of the government on this subject, the moment this ore becomes detached from the soil in which it is embedded it becomes personal property, the ownership of which is in the men whose labor, capital and skill has discovered and developed the mine and extracted the ore or other mineral product. It is then free from any lien, claim or title of the United States, and is rightfully subject to taxation by the state as any other personal property is."

That case was mentioned with approval by the same eminent jurist in the late case of *Buford v. Houtz*, 133 U. S. at page 332 (10 Sup. Ct. Rep. 305). From the above quotation it will be seen that not only the ore, but "other mineral product," becomes the property of him whose labor, capital and skill has discovered and detached it from the soil in which it is embedded, although the soil itself is the property of the United States. That stone is a mineral will hardly be disputed. See Copp's Mining Laws (2d ed.), page 510. It has been recognized as such by the duly authorized department of the government, and entries of land containing valuable deposits of building stone or limestone are permitted as "placer claims," under §§ 2319 and 2329 of the Revised Statutes of the United States, which relate to the entry and patent of mining claims. See Decisions of the Department of the Interior Relating to Public Lands, vol. 3, p. 116; *Ib.* vol. 1, p. 560. We therefore conclude on the authority of the foregoing decisions of the

highest judicial tribunal in the United States, and the practice and rulings of the department of the interior, that Johnston was the owner of the stone in question. And it would seem to be quite immaterial whether it was obtained in an honest attempt to develop a coal claim or otherwise. He would have had an unrestricted right without any filing whatever to enter upon this same land and extract therefrom either stone or coal, if found therein, and thus become the owner of either. And it is difficult to perceive how his coal filing should place him in any worse position, as to third parties having no interest in the stone taken from the land, except to avoid paying for it after it had enhanced the value of their real estate, of which it became a part, than he would have occupied had he made no filing at all. We have thus disposed of the only objection raised by the appellant on this appeal.

But respondents insist that even if the appellant was the owner of the stone in controversy, his claim of lien should nevertheless be denied for the reason that it fails to comply with the requirements of the law. The objections to the lien notice are: (1) That it contains no statement of the amount due after deducting all credits and offsets. (2) It is not verified as required by statute. (3) The exhibit does not correspond with the allegations of the lien notice. (4) That it does not appear from the notice that the materials for which the lien is claimed were furnished for the building, and upon the credit of the building. (5) That the description of the property upon which the lien is claimed is insufficient. (6) That the notice contains no statement of the time when appellant ceased to furnish materials for said building.

The object of requiring the filing of the claim of lien is twofold: *First*, That the lien, which before is inchoate merely, may become fixed and certain; and, *second*, that the owner and all others interested in the property sought

to be affected may be apprised of the claim and thus afforded an opportunity of protecting their interests. A mechanic's lien is a creature of the statute, and its validity must in all cases be determined by the statute creating it. The form of the lien notice is immaterial. All that is necessary is that it contain substantially all of the essential requisites of a lien as prescribed by law. While the notice before us is by no means as explicit in some respects as it might have been, we nevertheless think that when fairly and justly construed it is not obnoxious to the objections urged against it.

1. It contains a statement of the amount due after deducting all just credits and offsets. This is conceded by the respondents, provided the exhibit or itemized statement which was made a part of the notice is to be considered. But respondents argue that the exhibit should be entirely disregarded. We are constrained, however, to take a contrary view. On this point Mr. Phillips says:

"All that is required is that enough should appear on the face of the statement to point the way to successful inquiry, which may be done as well by bill of particulars referred to in the claim as by averment therein." Phillips on Mechanics' Liens, § 350.

See, also, *Knabb's Appeal*, 10 Pa. St. 186; *McLaughlin v. Shaughnessey*, 42 Miss. 520.

2. The verification of the claim made by the claimant states that "he has read the foregoing notice, knows the contents thereof, that said claim is just and correct," etc. This is sufficient under the statute which requires that the verification shall be "to the effect that the affiant believes the same to be just."

3. It is claimed that there is a variance between the notice and the bill of particulars set forth in the exhibit. The point made is that the exhibit is a statement of an account between appellant and respondents, Harrington &

Smith. The exhibit does show an account with respondents, but it further shows on its face that such account was for "materials furnished C. E. Crow, contractor, as follows," etc.; and, as we have already said, the exhibit is a part of the notice.

4. We see no force in the objection that the cash credits are not stated in the notice to be all the payments which were made on account of the materials furnished. The whole amount of the claim, the payments and the balance due are stated in the bill of particulars, and that is sufficient.

5. With respect to the objection that it does not appear from the lien notice that the materials specified were furnished for this building, and upon the credit of the building, it may be said that a claim of lien is sufficient if it fairly shows that the materials were furnished to be used in the building or structure designated, and we are of the opinion that it so appears in this notice. The language is: "Said lien is claimed to secure the payment of an account of sixteen hundred and seventy-four ($1,674) dollars, for materials furnished to and for C. E. Crow, contractor, *under his contract with the said owners to erect said house.*" This, in connection with the exhibit, which contains an itemized account of the materials furnished, would indicate that said materials were intended to be used in the building.

6. We think the notice states with sufficient accuracy the time when the material was furnished. It shows the quantity of stone and when furnished, and also between what dates the materials were used in the construction of the building. When the time when the materials were furnished is required to be stated, "if the times when the work was done or materials furnished can be deduced from the claim and bill of particulars as filed, looking at them together, it is sufficient." Phillips on Mech. Liens, § 359.

6—5 WASH.

The statute requires the claims to be filed within ninety days after the claimant ceases to furnish material.    In this instance, the last material was furnished in October, 1890, as stated in the exhibit, and the claim was filed on the 29th of the same month, and this clearly shows that it was filed within the statutory time.    But the statement in the notice that "the lien claim is filed within ninety days from the date of ceasing to furnish said materials" would be alone sufficient.    Phillips on Mech. Liens (2d ed.), § 362.    Whether in any case the claim of lien has been filed within the time required by statute is a question of fact for the court or jury to determine.    2 Jones on Liens, § 1449; Phillips on Mech. Liens, § 362.

The judgment of the superior court is reversed, and the cause remanded with directions to enter a decree establishing and foreclosing the lien as prayed in plaintiff's complaint.

SCOTT, HOYT, DUNBAR and STILES, JJ., concur.