KEWEENAW ASSOCIATION *v.* FRIEDRICH.

CONTRACTS—OFFER AND ACCEPTANCE—SURFACE RIGHTS.

> One who has accepted an offer to sell him the "surface rights '
> of specified land, subject to a railroad right of way previously
> conveyed, for a specified amount, is justified in refusing to
> accept a formal contract reserving to the grantor the right to
> enter on the land, or any part thereof, at all times, to explore
> and mine for ores and minerals, and carry on the business of
> mining, and remove ores and minerals, and, for such purpose,
> to keep so much of the land, and for such time, as he shall
> deem expedient, provided that he shall pay the purchaser for
> such occupation a specified amount.

Appeal from Dickinson; Stone, J.   Submitted February
3, 1897.   Decided April 27, 1897.

Bill by the Keweenaw Association, Limited, against
John Friedrich and others for the specific performance of
a land contract.   From a decree dismissing the bill, com-
plainant appeals.   Affirmed.

Complainant was the owner of the S. E. ¼ of S. W. ¼
of section 19, town 40 N., range 30 W., in the county of
Dickinson.   Defendants, desiring to purchase it, in June,
1891, made written application by letter through their
agent, John Friedrich, to J. M. Longyear, agent of the
complainant, who resided in Marquette.   He forwarded
the application to the office of the company at Newport,
R. I.   He received reply that the company would sell the
surface rights in the land, payable $1,000 in cash, balance
in three years at 7 per cent.   On receipt of this letter,
Longyear wrote the defendants' agent, John Friedrich, as
follows:

"In reply to your application of the 16th of June, I
am directed to advise you that we will sell you the surface
rights of SE—SW, Sec. 19, 40—30, subject to railroad

right of way, heretofore conveyed, for $4,000, payable $1,000 cash, balance on or before three years, with interest at 7 per cent. per annum. All payments to be made in national bank drafts on New York to order of A. P. Bonney, treas. On receipt of the cash payment, the company will make you a contract accordingly. This offer will remain open to you until the 10th inst.; after that date, price subject to change without notice."

On receipt of this letter, defendants wrote, July 9th, accepting the proposition, and remitting the $1,000. To this Longyear replied July 10th, acknowledging the receipt of the money, and stating that he had sent for the contract. Complainant executed the contract in duplicate, sending both duplicates to J. M. Longyear. On August 4, 1891, Mr. Longyear forwarded one of the duplicates to the defendants for execution, saying that on receipt of the contract and note, duly executed, he would deliver to them the counterpart contract, which had been duly executed on the part of the association, the same being for surface rights. Complainant received no reply to this communication, nor return of the contract. Mr. Longyear, on behalf of the complainant, wrote several other letters, asking that the contract be executed and returned, to all of which no reply was received. Complainant thereupon filed this bill to enforce the contract and foreclose the same. December 24, 1894, after the bill was filed and the subpœnas served, the defendant McLaughlin wrote to Mr. Longyear, saying:

"If I remember right, there was no contract made between the parties. We hold your receipt for $1,000, paid by us as part of the purchase price of said land. I paid of this amount $333.34, and am willing to quitclaim my interest for one-half that amount if settled out of court, and I think both Friedrichs will do the same, rather than have any further trouble in the matter."

The defendants filed an answer admitting the letters claimed to constitute the contract, and asserting as a defense that the contract afterwards sent for them to execute was not in accordance with the terms contained in the letter.

This land was purchased for the purpose of platting into village or city lots. Defendants immediately took possession, did some clearing, employed surveyors, and staked the property into lots. They did some work upon it after the receipt of the contract which they now repudiate. The first intimation conveyed to complainant that defendants had any objection to the form of this contract was conveyed in their answer to the bill filed. The court entered a decree for the defendants upon the ground that the term "surface rights" is vague and indefinite, and that the minds of the parties had never met upon the precise terms of the contract.

*Ball & Ball*, for complainant.

*Cook & Pelham*, for defendants.

GRANT, J. (*after stating the facts*). I think the proposition in the letter and defendants' acceptance constituted a complete and definite contract. We are cited to no authority defining what is meant by the term "surface" or "surface rights" as applied to land. The agreement was to convey "all surface rights except those heretofore conveyed" by the complainant to the railroad company mentioned in the letter. An owner of land may convey title in fee simple to the surface, or to the ores, minerals, and quarries beneath the surface. Defendant McLaughlin testified, "By 'surface rights' we mean the fee simple of the surface, and what is on the surface." This is the plain meaning of the term, and was so understood by complainant. The contract proposed was not in compliance with the contract contained in the letter. It imposed conditions which interfered with the use and enjoyment of the surface. The defendants were under no obligation to accept it. It was, however, their duty to notify the complainant of their objections, and to ask for a contract in compliance with that established by the correspondence. If complainant had refused such a contract, undoubtedly the defendants could have treated the other

as at an end, and could have recovered back the money paid. They were entitled to a deed in fee simple of the surface rights. The complainant retained title to the ores, minerals, etc., beneath the surface, with such rights of removal as the law would give it if it or its grantees should undertake to remove them. What those rights are we need not determine. That question is not before us. The complainant saw fit to make a contract to convey in fee simple the surface rights of the land, without any other reservation or rights than the law gave it to what was beneath the surface conveyed.

We need not discuss the question argued by counsel for the complainant that extrinsic evidence would be permissible to define ambiguous terms, or to identify property conveyed. Complainant concedes that "the term 'surface rights' has a definite and well-understood meaning. It means the entire surface of the land, reserving the minerals to the grantor." These surface rights were covered by the contract which was executed. Both parties so understood it. Defendants were entitled to a contract in accordance with the letter, and could have compelled complainant to execute it. There has been no refusal on the part of complainant to give such a contract. The original contract, therefore, stands intact, to be enforced by either party.

The decree should be reversed, and decree entered in this court in accordance with this opinion. Complainant should recover the costs of both courts.

MONTGOMERY, J. In addition to the facts stated in the opinion of Mr. Justice GRANT, it should be stated that the only written authority which J. M. Longyear, the agent of complainant, residing in Marquette, had for the sale of these lands, was a clause in a letter covering other topics, written by the chairman of complainant, which was as follows: "John Friedrich: We will sell him surface rights SE—SW, 19, 40—30, at $100 per acre, payable $1,000 cash, balance three years at 7 per ct." It should

also be stated as to the pleadings that the answer of defendants does not admit that the letters set forth in complainant's bill constitute a contract. On the other hand, the answer denies "that said counter proposition [the letter signed Longyear] was signed by any person having authority to bind said complainant to sell said land in accordance with the terms thereof." The answer further states that the defendants did not understand that said complainant would be so bound until after the execution by it of the contract referred to in said counter proposition, and the acceptance thereof. The circuit judge expressed a doubt as to whether the contract by complainant was void under the statute of frauds, as not having been made by any person lawfully authorized in writing, as required by 2 How. Stat. § 6181, and, while not expressly passing upon this question, held that the minds of the parties had not met upon the meaning of the term "surface rights." The record presents three questions: *First*, whether the contract was valid under the statute of frauds; *second*, whether the minds of the parties met upon the terms of the contract; and, *third*, whether complainant has shown itself in a position entitling it to enforce the contract.

If the term "surface rights" has a definite meaning, as used in this agreement, it must be a right to a fee in the lands, subject to a reservation of the minerals in the grantor. A mere reservation of the minerals, standing alone, will not permit the surface to be disturbed. *Erickson* v. *Iron Co.*, 50 Mich. 604. And yet, in the contract which complainant proposed and offered to the defendants for execution, it was provided that the grantor should have the right to enter upon the land, or any part or parts thereof, at all times, and "to explore, search, dig, and mine for ores and minerals, and carry on the business of mining and removing ores and minerals, and, for such purpose or purposes, to take, use, and keep so much and such parts of said land, and for such term of time, as said party of the first part, its successors or assigns, *shall*

*deem expedient*, without any let, hindrance, or interference by the parties of the second part, their heirs or assigns: Provided that, if said party of the first part, its successors or assigns, shall occupy the surface of said land, or any part thereof, for the purposes aforesaid, it or its assigns so occupying shall pay the parties of the second part, or those then having their estate in such land so occupied, all damages caused to them by such occupation, not exceeding, however, $100 for each acre of said land so occupied, and the actual cost of the improvements then thereon, and made by the parties of the second part, their heirs or assigns." It is very clear that, if the contract embodied in the proposition and acceptance is to have the construction now contended for by complainant's counsel, the complainant did not comply with its contract in the tender of the formal contract which it made. Furthermore, it will be observed that the so-called "acceptance," purporting to be signed by Longyear as agent, did not follow the authority contained in the letter of the chairman of the complainant, from which we have quoted above. The terms of payment were different, and, this being the only written authority, it cannot be said that the agent had authority conferred by writing to make the contract which he assumed to make. Possibly, this difficulty might have been avoided by ratification, were it not for the fact that when complainant assumed to execute the contract, and to act upon the preliminary agreement, it so far departed from its terms that the defendants were justified in not accepting the formal contract tendered.

I think the correct result was reached by the learned circuit judge, and that the decree should be affirmed.

LONG, C. J., HOOKER and MOORE, JJ., concurred with MONTGOMERY, J.