**ALLEN et al. v. HEINATZ et al.**
No. 9715.

Court of Civil Appeals of Texas. Austin.
May 26, 1948.

Rehearing Denied July 7, 1948.

W. Clarke Blalock and Robert B. Thrasher, both of Austin, and Wood & Wilcox by S. E. Wilcox, Jr., all of Georgetown, for appellants.

Albert G. Walker and John D. Cofer, both of Austin, for appellee Marvin Heinatz.

Shelton & Shelton, of Austin, for appellees Inez Sylvester and others.

McCLENDON, Chief Justice.

The controlling question here is whether commercial limestone is included in a devise of "the mineral rights" in a 400-acre tract of land. By a codicil to her will dated September 29, 1922, Mrs. Heinatz devised to her daughter Dora her homestead in Bagdad, Williamson County, absolutely, "also the surface rights exclusive of the mineral rights, of 400 acres more or less of wood land in connection therewith, absolutely." In the same codicil she devised "the mineral rights of the 400 acres more or less of wood land above mentioned, with right of ingress and egress" to trustees for the benefit of all her children. Plaintiffs claim under the devise of the "mineral

rights" and defendants claim under Dora. In a jury trial, the judgment was in favor of plaintiffs, in effect decreeing that limestone was included in the devise of "mineral rights"; and defendants have appealed.

The facts pertinent to this controlling question are without substantial dispute.

Mrs. Heinatz, a widow, had seven children including Dora, who never married and lived with her mother in the old home place. Mrs. Heinatz's original will was executed January 31, 1912. In it she gave Dora a life estate in the home place and in the 400 acres, such estate, in case of her marriage, to terminate five years thereafter. By codicil of August 28, 1915, this provision was revoked, and the home and 400 acres given to Dora, with the proviso that should she die without issue the property should go to others. By the codicil of September 29, 1922, this latter provision was revoked and that stated above substituted. Mrs. Heinatz died in 1935, and the will was duly probated. The old town of Bagdad, where the home place was located, was about four miles west of Leander. The 400 acres was west of the home tract and separated from it by another tract. It was about 400 varas wide and 900 varas long, in a very rough part of the country, underlaid with limestone, of which there were many outcroppings on the surface. The soil was thin, only from 15 to 40 acres being susceptible of cultivation. It was never fenced until some years after Mrs. Heinatz's death; and had been used only for the wood for domestic purposes, fences, etc. Prior to 1929 no limestone had been quarried for commercial purposes in that section. During 1919 to 1921 there had been a great deal of oil excitement and activity in the community, drilling machinery passing the Heinatz home frequently. Mrs. Heinatz executed two oil and gas leases in June and October 1919. These leases were excluded.

We attach no particular significance to the use of the words, "surface rights exclusive of mineral rights," in the devise to Dora, and the words, "mineral rights * * * with right of ingress and egress" in the devise to the trustees. It is clear that Mrs. Heinatz intended by the two devises to dispose of all interest in the land, severing the mineral title (mineral rights) from the non-mineral title (surface rights). In other words the trustees took title absolutely to the entire mineral estate; and Dora the entire title to the land other than the mineral estate.

Nor do we attach any significance to the fact that the two estates were devised in the same instrument, and no presumption of granting the largest estate possible would apply as to either estate, as would be the case of a grant with reservation in the grantor.

■ The sole question we have here for decision is whether the term "mineral rights" as used in the will included limestone. Upon this question appellants invoke the rule that in determining the author's intent, the language of a written instrument must be interpreted in the light of the circumstances surrounding its execution. This is a rule of ancient origin, and has been variously stated and applied. "The courts * * * may avail themselves of the same light which the parties enjoyed * * * and may place themselves in the same situation as the parties * * * in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the thing described." Lockwood v. Ohio River R. Co., 4 Cir., 103 F. 243, quoted with approval in Stevens v. Galveston, H. & S. A. R. Co., Tex.Com.App., 212 S.W. 639, 642. The A.L.I. Restatement (Property, Vol. 3, § 242) formulates the rule thus: "The judicially ascertained intent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of the circumstances of its formulation."

■ We agree with appellees' statement that the meaning of the language employed is: "Certainly not (to be arrived at) by a Gallup Poll, nor equally under the rules of such parlor games as 'Animal, Vegetable, Mineral.'" The meaning applied must be that usually and ordinarily understood to apply to the same or similar language used in instruments of this char-

acter. The fact that there was oil excitement in the community at the time and that Mrs. Heinatz had made two oil and gas leases on the property, might be pertinent were the issue that of her motive in changing her will in the particular involved; but those facts, standing alone, would not limit the meaning of the words "mineral rights" to oil and gas, or otherwise abridge their meaning. Anderson & Kerr, Drilling v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217.

Unless there is some essential difference from the viewpoint of inclusion within the general meaning of "mineral rights," in an instrument of this character between commerical sand and gravel, on the one hand, and commercial limestone, on the other, the instant case is ruled by the decision in the recent case of Psencik v. Wessels, Tex. Civ. App., 205 S.W.2d 658 (error ref.). Certainly no general designation of minerals or mineral rights could be more inclusive than that employed in the Psencik case. The basic consideration for the holding in that case that sand or gravel was not included in the general term "all minerals of whatever description, be the same gaseous, liquid, or solid" is embodied in the following quotation:

"It is a matter of common knowledge that where those subjects are dealt with they are referred to specifically (e. g. see Gantt v. McClellan, Tex.Civ.App., 252 S.W. 229, 233, error refused) and that in the common vernacular of those dealing in farm lands and mineral rights the term 'minerals' does not include ordinary commercial gravel. It might as well be held to include fertile top soil which, under conditions arising subsequently to the grant, should become commercially valuable for replenishing lawns in an adjacent city, or other soil for filling lots or building roads. It would serve no useful purpose to analyze the specific provisions of the reservation in question. Its terms do not indicate or suggest that sand or gravel is included."

These considerations apply with equal force to commercial limestone as to commercial sand and gravel. It might be appropriately added here that the term "minerals" might as well be held to include soil suitable for making adobe building blocks, as to ordinary stone used for the same purpose.

While it is only necessary to refer to the Psencik opinion and its review of the authorities and the reasoning upon which the decision is based, we shall consider some of the grounds upon which appellees contend for a distinction in principle between that case and this.

It should be noted, at the outset, that appellees, not only do not question, but concur in the soundness of the Psencik decision. In the main their asserted essentially differentiating features between commercial sand and gravel and commercial limestone are: (1) the lack of definite chemical composition in the former and its presence in the latter; and (2) the wide use of limestone for building purposes from the earliest times; its long and extensive use as such in Texas; its asserted reservation in the Crown, along with other specified minerals, under Spanish law; and its classification as a mineral resource in government and other widely circulated reports, in histories, encyclopedias and other publications; the asserted application being that: "The circumstances determining the meaning of words are to be found in the economic, social, and political history of our state."

As to the first of these features: It is true, as stated in the Psencik case, that: "In some of the cases the courts adverted to the fact that neither sand nor gravel has a definite chemical composition which would entitle it to be classed as a mineral"; followed by a quotation from a Philippine case. But the decision in the Psencik case was not in any sense rested upon that ground. Such a test, if universally applied, would exclude other substances generally recognized as coming within the meaning of minerals as used in instruments of this character. This no doubt is true of the general term "limestone" as appears from the following quotation in appellees' brief, from a circular issued by the Federal Bureau of Mines in 1947 (I.C. 7416), upon the subject of Limestone as a Building Material:

"Definition. Limestone consists essentially of calcium carbonate ($CaCO_3$).

Rocks classed commercially as building limestones may contain varying quantities of mangnesium carbonate. If more than 10 per cent is present, they are termed 'magnesium' or 'dolomitic limestones,' if the magnesium carbonate content approaches 45 per cent, the rock consists essentially of the double carbonate of lime and magnesia ($CaCO3.MgCO3$) the mineral dolomite. When used as dimension stone dolomite is classed commercially as limestone."

 Mineral oil is definitely a mineral in the sense here in issue; yet no "definite chemical composition" can be ascribed to it, its specific chemical components differing in different oil fields. Clearly, the existence, vel non, of a "definite chemical composition" in a particular substance furnishes no criterion for its classification as mineral in the character of instruments here involved.

As to the second feature. The brief points out: Charles III, King of Spain, on May 22, 1783, issued a royal proclamation, applicable to all Spanish America except Peru, reserving all minerals to the Crown. This reservation included specifically "not only mines of gold and silver, but also those of precious stones, copper, lead, tin, quicksilver, antimony, calamine, bismuth, rock salt and all other stony matter (fossils), be they ores, or semi-minerals, bitumen and liquids (juices) of the earth." (See Hawkins, El Sal del Ray, quoting from a translation in John Rockwell, A Compilation of Spanish and Mexican Law in Relation to Mines and Titles to Real Estate, in Force in California, Texas, and New Mexico. London 1825; New York 1851.) The minerals thus reserved (whatsoever they were) were released to the landowners by Art. 7, Sec. 39, Texas Const. 1866, carried forward in the Constitutions of 1869, article 10, § 9, and 1876, article 14, § 7, Vernon's Ann.St. Stephen F. Austin, in a pamphlet to encourage immigration to Texas (1831), states that while its "mineral wealth" had never been carefully examined or explored, the existence of certain minerals in various stated parts of Texas was well known, and specifically that "Stone or bituminous coal has been found in quantities on the Trinity, Brazos and Colorado Rivers, and no doubt

abounds." (See Barker, History of Texas, pp. 120-121.) Various statistical circulars and reports are cited showing the great volume of limestone used in building in this country; also the Texas Almanac for various years, which lists limestone among the mineral resources of Texas; the value of the product for various years being given. It should be noted that: in the same listing along with "stone," building sands and gravel are also included; the total 1921 production of limestone in Texas being 939,170 tons, worth $956,519, and that of sand and gravel 2,970,568 tons, worth $1,847,741; in 1945 the limestone product was 2,419,420 tons, worth $2,265,136, that of sand and gravel 11,380,244 tons, worth $7,595,804. There is nothing in the relative amount or value of the two products which would call for any essential difference in their classification. No "circumstances determining the meaning of words" calling for such differentiation "are to be found in the economic, social, and political history of our State." All of the cited publications which include limestone under the general classification of mineral also include sand and gravel. In the sense that they are inorganic components of the earth, they necessarily fall in that general classification. See Psencik case for discussion of this topic. But that is not the issue here.

The adjudicated cases dealing with limestone as coming within the general classification of minerals in instruments of the class we are considering are rare. We refer to the citations and analyses in the A.L.R. notes in Vol. 17, p. 161, and Vol. 86, p. 895. We do not find that they apply to limestone a different rule than that applicable to sand and gravel. Usually there is something in the instrument other than the general word "minerals" upon which the decision turns. In this connection appellees strongly urge the decision in Northern Pac. R. Co. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575, cited in the Psencik case "as illustrative of the principle that the use to which the property is ordinarily suited may control in determining the meaning of 'minerals'." The Soderberg case holding was "that lands valuable solely or chiefly for granite quarries are 'mineral lands' within the meaning of the exception of such lands

from a grant to the railroad in an act of congress." We have no pertinently analogous case here.

■ Adhering to the same basic reasoning as that in the Psencik case, we hold that the devise of the "mineral rights" to the trustees in the 1922 codicil did not include commercial limestone.

The trial court's judgment is reversed and judgment is rendered for appellants.

Reversed and rendered.