512

# MARVIN HEINATZ ET AL V. R. K. ALLEN ET AL.

No. A-1872. Decided January 26, 1949.
Rehearing overruled March 23, 1949.
(217 S. W., 2d Series, 994.)

*Albert G. Walker* and *John D. Cofer,* of Austin, for Marvin Heinatz, *Shelton & Shelton,* of Austin, for Inez Sylvester and others, petitioners.

It was error for the Court of Civil Appeals in its construction of the words mineral rights in considering the surrounding circumstances and facts in connection with the previous development of limestone and oil in the locality of the land, and in not holding that the words mineral rights being used in the will without restriction that the intention of the testatrix is to be ascertained as a matter of law from the language used in the will without aid as to attending circumstances. Anderson & Kerr Dril. Co. v. Bruhlmeyer, 134 Texas 574, 136 S. W. (2d) 800; Warner v. Patton, 19 S. W. (2d) 1111; Luse v. Palmer, 221 S. W. 1031.

*W. Clark Blalock* and *Robert B. Thrasher,* both of Austin, and *Wood & Wilcox* and *S. E. Wilcox, Jr.,* all of Georgetown, for respondents.

In this connection see the cases of Campbell v. Tennessee, C. J. & R. Co., 150 Tenn. 423, 265 S. W. 674; Beury v. Shelton, 151 Va. 28, 144 S. E. 629; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The controversy is as to the ownership of or right to the commercial limestone in a tract of land containing 400 acres in Travis and Williamson Counties. The land was owned by Mrs. Emilie Heinatz, who devised to her daughter, Dora Heinatz, "the surface rights exclusive of the mineral rights" and to trustees for all of her children "the mineral rights".

In this suit by petitioners, who claim under the trustees, against respondents, who claim under Dora Heinatz, judgment was rendered by the district court in favor of petitioners against respondents for the title and possession of the mineral rights and estate in the land "including commercial limestone and building stone" and for actual damages in the sum of $15,-888.00, and exemplary damages in the sum of $500.00, on account of limestone taken from the land, with injunction restraining respondents from quarrying or removing any commercial limestone or building stone therefrom.

The Court of Civil Appeals, holding that commercial limestone is not included in the devise of "the mineral rights", reversed the trial court's judgment and rendered judgment for respondents. 212 S. W. (2d) 987.

■ We do not understand the opinion of the Court of Civil Appeals, as petitioners understand it, to be based in part upon evidence as to circumstances attending the execution of the will or extrinsic evidence as to what the testatrix may have had in mind. The opinion mentions the rule which sometimes permits proof of the circumstances, but we understand that the court holds as a matter of law, from the terms of the will itself and without looking to evidence as to the surrounding circumstances, that the devise of "the mineral rights" does not include commercial limestone. It is also our opinion that, in view of the simple and plain terms of the will, the intention of the testatrix as to what is devised is to be ascertained without aid from evidence as to the attending circumstance. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 136 S. W. (2d) 800, 127 A. L. R. 1217.

By the terms of the will the testatrix devised to Dora Heinatz "the surface rights exclusive of the mineral rights" and to the trustees "the mineral rights". There are a number of decisions, some appearing to conflict with others, as to the meaning of "surface" or "surface rights" used in a deed or in a will, either in connection with or without reference to a grant, reservation or devise of all or part of the minerals. See Hendler v. Lehigh

Valley R. Co., 209 Pa. 256, 58 Atl. 486, 103 Am. St. Rep. 1005
Keweenaw Ass'n v. Freidrichs, 112 Mich. 442, 70 N. W. 896;
Shell Oil Co. v. Manley Oil Corp., (U. S. C. C. A. 7th Civ.)
124 Fed. (2d) 714, 717; Dolan v. Dolan, 70 W. Va. 76, 73 S.
E. 90; Ann. Cas. 1913D 125; Ramage v. South Penn Oil Co.,
94 W. Va. 81, 118 S. E. 162, 31 A. L. R. 1509; Drummond v.
White Oak Fuel Co., 104 W. Va. 368, 140 S. E. 57, 56 A. L. R.
303; Jividen v. New Pittsburg Coal Co., 45 Ohio App. 294, 187
N. E. 124.

■ We need not discuss the above-cited cases nor the different
meanings that may be given to "surface" or "surface rights",
for we are convinced that the terms of the will clearly disclose
the intention of the testatrix to make disposition of her entire
interest and estate in the 400 acre tract and to devise to the
trustees only "her mineral rights". It follows that the controlling
question in the case is that stated and decided in the opinion of
the Court of Civil Appeals, that is, whether commercial lime-
stone is included in the devise of "the mineral rights" in the
tract of land. In deciding this question we must look to the
evidence as to the nature of the limestone, its relation to the
surface of the land, its use and value, and the method and
effect of its removal. While there is some conflict in the testi-
mony, the facts hereinafter set out are shown by the evidence
without conflict in important particulars.

The 400 acre tract is about two miles from the Heinatz home
tract. It was not fenced and was neither cultivated nor grazed,
being used only for taking wood from it, for fire and stove wood
and cedar posts. It is in what is known as "the hill country",
is rough land crossed by gullies and a number of ravines, de-
scribed by some of the witnesses as canyons. Different opinions
were expressed as to how much of the 400 acres could be culti-
vated. One witness testified that only eight acres could be put
in cultivation, another 15 acres, and another 40 acres. There is
testimony that mesquite grass grows on parts of the land, but
much of the land is barren because of caliche or caliche dirt
on the surface. Petitioner Marvin Heinatz testified that the
land would make fair grazing land if the brush were cleared
off so that the grass could grow. The valleys or gullies are very
well wooded, but their side slopes have smaller timber, shin oak,
cedar, shrubs and brush that grow in the hill country. Most of
the timber is cedar.

In places limestone is found exposed on the surface. One of
the witnesses testified that a conservative estimate of the total
area of exposed limestone on the surface of the 400 acre tract

would be 15 acres. The undisputed evidence shows that there are outcroppings of limestone in all of the gullies and ravines. Petitioners made three core tests to determine the depth and nature of the soil. One of these, dug to a depth of two feet, showed black soil, another showed eighteen inches of soil and then caliche, and the third ten inches of soil and then rock. Witnesses for respondents testified to twenty-five core holes scattered over the 400 acres, that the top rim of the limestone rock was encountered in these test anywhere from the surface to a depth of about eight feet, that in twenty-three of the tests all of the overburden from the top surface to the limestone was caliche, and that in the other two test holes there was black soil. Where soil is found on the land it is for the most part leaf mold and is shallow. Under it and above the limestone is caliche of varying depths. Much of the top surface and most of the overburden is caliche.

The limestone is taken from the land by quarrying. First the overburden is removed by scraping or stripping it off of the limestone. Then by what is called a channeling machine slots are cut in the stone to the desired depth. Wedges are put in at the bottom of the cut and driven up so that the stone breaks off in blocks. The blocks are taken to the mill and sawed into slabs. Witnesses for respondents testified that for each acre of land actually quarried five additional acres of land are for all practical purposes destroyed by the depositing of caliche and waste rock taken from the quary.

Limestone was quarried from the land and sold by respondents, the total amount removed and saved being 21,227 cubic feet. In the sale of it respondents received $15,888.00. The limestone is described by the witnesses as cream stone and shell stone, the first seven feet of the eight feet cut being cream stone and the other being shell stone or mostly shell stone. An expert witness called by respondents testified that in his opinion the limestone he saw at the quarry, or most of it, was not merchantable because of the wavy deposits, it being composed of streaks of cream and streaks of shell that did not run straight. The record contains testimony offered by respondents of expenditures in opening and operating the quarry and processing the stone substantially in excess of the amount that they realized from selling the stone.

Petitioners cite and quote from several books of reference, including histories, encyclopedias and almanacs, in which limestone or other stone is classified or referred to as a mineral,

and argue that because of the classification there made the limestone in the 400 acre tract of land is mineral and passed to the trustees by the devise of "the mineral rights". It is apparent from examination of those sources that their classifications are based upon the scientific or technical definition of the word minerals. The same sources and other similar sources include also sand and gravel under the general classification of mineral or mineral resources. If the scientific definition of minerals is followed the caliche or caliche dirt which covers or composes a great part of the surface of the tract of land is a mineral. Caliche is described in the testimony of one of the witnesses in this case as a form of limestone deposit. Like limestone, caliche consists essentially of calcium carbonate. A scientist's article in a technical magazine recently issued lists limestone, gravel, sand, caliche and many other raw materials or substances as mineral resources of the state.

■ It has been pointed out in several decisions that the scientific or technical defintion of minerals is so broad as to embrace not only metallic minerals, oil, gas, stone, sand, gravel and many other substances, but even the soil itself. In one decision it is said that it is rare, if ever, that mineral is intended in the scientific or geological sense in the ordinary trading transactions about which deeds and contracts are made. Beury v. Shelton, 151 Va. 28, 144 S. E. 629, 630-632. See also: Northern Pacific Ry. Co. v. Soderberg, 188 U. S. 526, 47 L. Ed. 575; Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 141 N. E. 537; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35.

The words "the mineral rights" used in the will are to be interpreted according to their ordinary and natural meaning, there being nothing in the will manifesting an intention on the part of the testatrix to use them in a scientific or technical sense. This is the established rule because it gives effect to the intention of the testator, who is presumed to have been familiar with the ordinary and natural meaning of the words used in his will. Travers v. Reinhardt, 205 U. S. 423, 27 Sup. Ct. 563, 51 L. Ed. 865, 869; Northern Trust Co. v. Wheeler, 345 Ill. 182, 177 N. E. 884, 83 A. L. R. 154, 159; West v. Glisson, 184 S. W. 1042, application for writ of error refused; 57 Am. Jur. pp. 746-747, Sec. 1148. This rule of interpretation has been applied to the word "mineral" or "minerals" used in conveyances and reservations, that is, it has been held that these words are to be understood as used in their ordinary and natural meaning unless there is a clear indication that they are intended to have a more or a less extended signification. Brady v. Smith, 181

N. Y. 178, 73 N. E. 963, 106 A. S. R. 531, 2 Ann. Cas. 636; Beury v. Shelton, 151 Va. 28, 144 S. E. 629; Campbell v. Tennessee Coal, Iron & R. Co., 150 Tenn. 423, 265 S. W. 674; Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 141 N. E. 537; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35; State ex rel Atkinson v. Evans, 46 Wash. 219, 89 Pac. 565, 10 L. R. A., N. S. 1163, 1164.

■ In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitable be manufactured into cement. Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word. Hendler v. Lehigh Valley R. Co., 209 Pa. 256, 58 Atl. 486, 103 Am. St. Rep. 1005; Waring v. Foden, (1932) 1 Ch. 276, 86 A. L. R. 969, 980; State ex rel Atkinson v. Evans, 46 Wash. 219, 89 Pac. 565, 10 L. R. A., N. S. 1163; U. S. Aitken, 25 Phillipine, 7, 19; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35; Psencik v. Wessells, 205 S. W. (2d) 658, application for writ of error refused; Winsett v. Watson, 206 S. W. (2d) 656, application for writ of error refused. The limestone on the land involved herein, having value only for building purposes, underlying most if not all of the land at varying and usually shallow depths, outcropping in all the ravines, sometimes found on the top of the surface and removed by quarrying after scraping off the overlying calichie or other top soil, is so closely related to the soil, so nearly a part of the very surface, the soil itself, that it is reasonably and ordinarily considered a part of the soil and as belonging to the surface estate rather than as a part of the minerals or mineral rights. Beury v. Shelton, 151 Va. 28, 144 S. E. 629; Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 141 N. E. 537; Campbell v. Tennessee Coal, Iron & R. Co., 150 Tenn. 423, 265 S. W. 627; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35.

■ Another reason supports the conclusion that the words "the mineral rights" used in the will were not intended to include the right to the limestone. It is that the limestone is recoverable only by quarrying on the open pit method which destroys the surface for agricultural and grazing purposes. The fact that the particular substance, although technically a mineral, is recoverable only in this way, and with this result, is not decisive of the question, but it is a factor which is used with others in

determining that the substance is not included in a conveyance or reservation of minerals. Beury v. Shelton, 151 Va. 28, 144 N. E. 629; Brady v. Smith, 181 N. Y. 178, 73 N. E. 963, 106 Am. St. Rep. 531, 2 Ann. Cas. 636; Carson v. Missouri Pacific R. Co., 212 Ark. 963, 209 S. W. (2d) 97, 1 A. L. R. (2d) 784, and Note pp. 787-798.

A number of carefully considered cases hold that limestone is not embraced in the word minerals used in a deed. In Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35, the deed by its terms conveyed "all minerals, coal, clays, spars, oilgases and every other kind and character of mineral cement, oil, gases, etc., not included in the above general description * * *, together with the exclusive right to mine same * * *." The court held that by reason of the use of the word cement in the deed the grantor intended to convey limestone from which cement might be manufactured. In so holding the court expressed the opinion that the use of the term "minerals", without more, would not show an intention to convey limestone, adding that limestone is not mineral within the ordinary and popular sense of the word. The opinion contains the statement, supported by citation of the three cases next discussed herein, that "the authorities agree that the word 'minerals' as used in a deed does not ordinarily include limestone."

Campbell v. Tennessee Coal, Iron & R. Co., 150 Tenn. 423, 265 S. W. 674, holds that a deed reserving "all the mines or minerals contained or imbedded in or on said tract; also the right to enter * * * to explore for mines or mineral with the right to make excavation, to erect works or machinery for the purpose of manufacturing such minerals as may be found on or continguous to the land" does not reserve limestone. The land consisted of a limestone bluff which was valuable for quarrying and manufacturing into fertilizer. The decision was influenced in part by the rule that reservations are construed strictly against the grantor.

The deed construed in Brady v. Smith, 181 N. Y. 178, 73 N. E. 963, 106 Åm. St. Rep. 531, reserved to the grantor "all mines and minerals which may be found on the above piece of land, with the right of entering at any time * * * to dig and carry away the same". The land was largely covered with limestone or granite ledges about the natural surface of the ground, with some timber and some tillable land. The limestone was removed by open quarrying. It was held that the deed did not reserve the limestone. The use of the word mines induced in

part but did not control the decision. This decision was followed in White v. Miller, 200 N. Y. 29, 92 N. E. 1065, 140 Am. St. Rep. 618, 619, in which it was held that a deed excepting "mines and minerals" did not reserve limestone to the grantor.

The grantor in Beury v. Shelton, 151 Va. 28, 144 S. E. 629, excepted and reserved "all the metals and minerals of every kind and character whatsoever in and underlying" the land, with the right "to excavate therein and thereon for such metals and minerals" and the right "to mine, dig and remove" all such metals and minerals from the land. It is shown by the opinion that the facts in that case with respect to the land, the limestone in and on it, and the effect of removing it were substantially the same as the facts in the instant case. It was held that the deed did not reserve limestone. This decision also is influenced in a measure by the rule construing a grant against the grantor.

The deed construed in Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 141 N. E. 537, conveyed "all the bituminous or stone coal, together with the right to mine the same underlying" all of the premises, and also "all the rights in or title to the oil and minerals, of every description, underlying" the land. It was held that the deed did not convey limestone.

The text of American Jurisprudence, Volume 36, pp. 306-307, Section 35, contains this statement: "Limestone is not included in a grant or reservation of minerals." It cites the two decisions of the Court of Appeals of New York above mentioned and the annotations in 17 A. L. R. 161 and 86 A. L. R. 986. See also the annotation in 1 A. L. R. (2d) 787, 795.

The Attorney General of Texas, in a well-considered opinion written February 16, 1947, advised the Commission of the General Land Office that gravel, sand, building stone, granite and caliche are not included in the term "minerals" as used in Article 5310 of the Revised Civil Statutes which provides that public school land "shall be sold with the reservation of the oil, gas, coal and all other minerals that may be therein." This opinion was expressly approved by another Attorney General on December 20, 1945.

The decision in Luse v. Boatman, 217 S. W. 1096, was that oil and gas are included in the reservation in a deed of "all the coal and mineral on and in" a tract of land. That decision was approved by this Court's refusal of the application for writ of error and by two later decisions; Elliott v. Nelson, 113 Texas 62, 251 S. W. 501, and Anderson & Kerr Drilling Co. v. Bruhl-

meyer, 134 Texas 574, 136 S. W. 800, 127 A. L. R. 1217. It is not correct, however, to assume as petitioners seem to assume, that the approval of Luse v. Boatman so given meant that this Court approved also the various expressions of opinions in other cases cited and quoted from in elaborate opinion of the Court of Civil Appeals in the Luse case. The opinions in three or four of those other cases contain statements, usually dicta, that the term minerals includes limestone or other stone. No question as to the ownereship of limestone or other stone was involved in the Luse case, the Elliott case or the Anderson & Kerr Drilling Company case. In each of those cases the question presented and decided was whether the word minerals used in a deed included oil and gas.

Other decisions cited by petitioners contain discussions of the meaning of the word minerals, with expressions of the opinion that limestone or other stone is a mineral, but in most of them the very question before us in this case was not involved. Hendler v. Lehigh Valley R. Co., 209 Pa. 256, 58 Atl. 486, 103 Am. St. Rep. 1005, discussing a reservation of "coal and other minerals", expresses the opinion that a vien of fine marble would clearly be reserved, and that a vein of pure white quartz sand, valuable for making glass, would clearly be reserved, and adds *"and so probably, if near enough a market to have a value,* would be granite or limestone or other building material, potter's or porcelain clay or the like." (Emphasis added.) The question actually decided by the case was that sand used only as material for grading was not reserved.

The Constitution of the State of Washington contained a provision which permitted aliens to purchase and own "lands containing valuable deposits of minerals, metals, iron, coal or fire clay". The land involved contained valuable deposits of limestone, silica, silicated rock and clay necessary to be used in the manufacture of cement. It was held in State ex rel Atkinson v. Evans, 46 Wash. 219, 89 Pac. 565, 10 L. R. A., N. S. 1163, that the alien was authorized to purchase and hold the land.

Petitioners cite and rely upon Missouri Pacific R. Co. v. Soderberg, 188 S. W. 526, 23 Sup. Ct. 365, 47 L. Ed. 575. The question in that case was whether a United States statute which excepted from a general grant to a railroad company "all mineral lands" excluded a quarter section of land valuable solely

or chiefly for granite quarries. The court held that the tract was excluded from the grant. In so holding, however, it applied the rule that grants from the sovereign should receive a strict construction, supporting the claim of the government rather than that of the individual, and it looked also to contemporaneous construction by rulings of the Land Department.

Other cases dealing with federal statutes are cited, as, for example, Johnson v. Harrington, 5 Wash. 73, 31 Pac. 316, which holds that one making entry on public land under a federal statute is entitled to all building stone as well as coal that he takes from the land. As was said in Campbell v. Tennessee Coal, Iron & R. Co., 150 Tenn. 423, 265 S. W. 674, 677, these cases "are not analogous to the one under consideration, and are decided under different rules of construction."

The several cases last above, discussed are typical of those upon which petitioners rely. A number of the many cases cited by petitioners contain expressions which classify or refer to limestone as a mineral, but the terms of the instrument construed and the facts as to the substance involved are not so nearly the same as those in this case as to give them authoritative value for the decision of the question here presented. We believe that the decided weight of the authorities most nearly in point sustains the decision of the Court of Civil Appeals that the devise of "the mineral rights" to the trustees did not include the limestone.

Very recently this Court refused applications for writ of error in two cases, one construing a deed reserving "all mines and wells of, and all minerals of whatever description, be the same gaseous, liquid or solid", and the other construing a deed conveying "oil, gas and other minerals". Psencik v. Wessels, 205 S. W. (2d) 656; (writ of error refused, 146 Texas, 673.) The first case, in a thorough opinion by Chief Justice McClendon of the Third Court of Civil Appeals, held that the deed did not reserve sand and gravel, and the second case, in a thorough opinion by Chief Justice McDonald of the Second Court of Civil Appeals, held that sand and gravel were not conveyed. This Court by its unqualified refusal of the applications for writ of error evidenced its conviction that the principles of law declared in the two opinions of the Court of Civil Appeals were correctly determined. Rule 483.

There is in our opinion no valid reason for distinguishing those two cases from this case. The limestone here involved

is technically or scientifically a, mineral, and the same is true of sand and gravel. The physical characteristics and the elements of limestone, sand and gravel are in great part the same. This substance, as those, has no rare or exceptional character or value, being useful only for building purposes. The limestone, like sand and gravel, is so found as reasonably to be considered a part of the surface rather than part of the mineral estate. Limestone, sand and gravel are removed by quarrying, resulting in the virtual destruction of the surface. We believe that a decision in this case that the limestone is included in the devise of "the mineral rights" would be inconsistent with the refusal of the applications for writ of error in those two recent cases.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 26, 1949.

### ON REHEARING.

The court ordered that judgment reforming and affirming the judgment of the Court of Civil Appeals be substituted for the judgment of affirmance entered on January 26, 1949. (above)

Order of March 23, 1949.