MURGUIA, Circuit Judge, dissenting:
Because I disagree with the majority's conclusion that dinosaur fossils fall within the ordinary and natural meaning of the word "mineral" and that they accordingly pertain to the mineral estate, I respectfully dissent.
The present case involves a dispute over ownership of several valuable dinosaur fossils that were found on a large ranch in Garfield County, Montana. The Severson family owned the ranch until 2005, when the mineral and surface estates were severed through a mineral deed that transferred the surface estate to the Murrays in full, but made express reservations regarding the mineral estate. Specifically, the mineral deed granted to Severson Minerals LLC, Robert E. Severson, and the Murrays, in varying percentages,
all right title and interest in and to all of the oil, gas, hydrocarbons, and minerals in, on and under, and that may be produced from the lands situated in Garfield County, Montana ... together with the right, if any, to ingress and egress at all times for the purpose of mining, drilling, exploring, operating, and developing said lands for oil, gas, hydrocarbons, and minerals, and storing, handling, transporting, and marketing the same therefrom together with the rights to remove from said lands all of Grantors' property and improvements.
After the transfer was executed, the Murrays-now owners of the surface estate and a portion of the mineral estate-discovered the first dinosaur fossil: a Pachycephalosaur spike cluster. Thereafter, the Murrays discovered and excavated more valuable fossils, including the "Dueling Dinosaurs" and the "Murray T-Rex." The question presented in this case is whether these rare and valuable dinosaur fossils are "minerals" under the 2005 mineral deed.
The question whether dinosaur fossils constitute "minerals" is a question of first impression under Montana law.[1] The Montana Supreme Court has twice considered whether a particular substance constitutes a "mineral" for the purposes of property transfers. InFarley v. Booth Brothers Land and Livestock Co., 270 Mont. 1, 890 P.2d 377, 378 (1995), the Montana Supreme Court asked whether scoria, a type of rock used in road construction, was a mineral. The court concluded it was not.Id. at 381. InHart v. Craig, the Montana Supreme Court considered whether sandstone used for rip-rap and landscaping was a mineral, again concluding that it was not. 352 Mont. 209, 216 P.3d 197, 211 (2009). In both cases, the court looked to the particular properties of the *1090 substance to see if it fell within the "ordinary and natural meaning" of the term "mineral."See *449 Farley, 890 P.2d at 380 (quotingHolland v. Dolese Co., 540 P.2d 549, 550-51 (Okla. 1975) );Hart, 216 P.3d at 211 (quotingHeinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, 997 (1949) );see also Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P., 350 Mont. 476, 209 P.3d 216, 219 (2009) (Words in a contract are interpreted "in their ordinary and popular sense unless the parties use the words in a technical sense or unless the parties give a special meaning to them by usage.").
The "ordinary and natural meaning" test, as applied to minerals conveyed through a property transfer, was first set forth in a 1949 Texas Supreme Court case,Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (1949). The Texas court held that "mineral," for the purposes of property transfers, is to be understood as used in its "ordinary and natural meaning unless there is a clear indication that it was intended to have a more or less extended signification."Id. at 997. The driving principle behind this test is to effectuate the intent of the contracting parties.Id. ("The words `the mineral rights' used in the will are to be interpreted according to their ordinary and natural meaning, there being nothing in the will manifesting an intention on the part of the testatrix to use them in a scientific or technical sense."). In other words, when Party A transfers to Party B the rights to all "minerals" in the estate, the court presumes that parties intended to apply the ordinary and natural meaning of "minerals," unless the contract says otherwise. In determining the ordinary and natural meaning of "mineral," theHeinatz court considered several factors, including "the evidence as to the nature of the [substance], its relation to the surface of the land, its use and value, and the method and effect of its removal."Id. at 995-96. In concluding the limestone at issue was not a mineral, one factor that the court considered was that the limestone was not valuable, but the court also considered the fact that limestone was quarried at the surface and would significantly affect the use of the surface estate.
As inHeinatz, inFarley andHart, the Montana court considered several factors, such as the substance's particular properties and use, in order to determine whether that substance was a mineral. Specifically,Farley andHart relied on the principle that "substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value .... Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word."Hart, 216 P.3d at 211 (quotingHeinatz, 217 S.W.2d at 997);Farley, 890 P.2d at 380 (quotingHolland, 540 P.2d at 550-51).
Here, the district court began by considering definitions of the term "mineral," including dictionary, statutory, and regulatory definitions.[2]See, e.g., Mineral,Black's Law Dictionary (10th ed. 2014); Mont. Code Ann. § 15-38-103(3); Mont. Code Ann. § 82-4-303(16). The district court noted that all of the definitions described the *450 mining of hard substances or oil and gas that are primarily extracted for future refinement and economic purposes, and that dinosaur fossils do not seemingly fall into those statutory definitions. I agree with the district court's summation of the quoted definitions. I further note that the district court's observation is supported by the way the term "mineral" is used in the mineral deed here, which clearly contemplates traditional mineral extraction for an economic purpose.
The district court went on to consider the unique properties of dinosaur fossils that distinguish them from those substances that we typically think of as minerals. The district court explained that fossils' mineral properties are not what make them valuable, but instead the value turns on characteristics other than mineral composition, such as the completeness of the specimen, the species of dinosaur, and how well the fossil is preserved. The district court further noted that fossils are the remains of once-living vertebrates, with paleontological value, and that they are not refined for economic purposes or mined in the traditional sense, but rather are discovered by happenstance. These are precisely the same types of factors that were determinative inFarley, Hart, andHeinatz under the ordinary and natural meaning test.
Indeed, if we only apply the factors applied by the Texas Supreme Court underHeinatz -"the evidence as to the nature of the [substance], its relation to the surface of the land, its use and value, and the method and effect of its removal"-we would still reach the district court's conclusion that dinosaur fossils are not minerals.[3]Heinatz, 217 S.W.2d at 995-96. First, the nature of the substance here is organic matter that has fossilized over time into a mineral compound. This factor weighs in *1091 favor of finding that fossils are minerals. Second, however, fossils pertain much more closely to the surface of the land. Like the quarried limestone inHeinatz, fossils are not "mined" but rather excavated. A large excavation would interfere with the use of the surface estate-a factor which theHeinatz court found weighed heavily against a finding that limestone was a mineral. Third, the use and value of fossils are not akin to other substances deemed minerals, such as coal, gas, or oil, which are typically extracted for some economic purpose. Collectively, these factors lead to the conclusion reached by the district court here-that dinosaurs are not "minerals" as that term is ordinarily understood.
In sum, the district court correctly concluded that dinosaur fossils do not fall within the ordinary and natural meaning of the term "minerals," as that term is used in the mineral deed in this case. I would accordingly affirm the district court's grant of summary judgment for the Murrays. For these reasons, I respectfully dissent.
All Citations
908 F.3d 437, 18 Cal. Daily Op. Serv. 10,639, 2018 Daily Journal D.A.R. 10,734